LAW OFFICE OF
**Peter A. Romero**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

January 13, 2023

**VIA ECF**
Hon. James W. Wicks
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

      Re:    *Francisco Garcia, et al. v. JAAC Corp. d/b/a Athenian Greek Taverna, et al.*
              Docket No.: 21-cv-07052 (JS) (JMW)

Dear Judge Wicks:

      This firm represents the Plaintiffs, Francisco Garcia and Dimas Acosta, in the above-referenced matter brought against Defendants JAAC Corp. d/b/a Athenian Greek Taverna, Alex Homenides, John Homenides, and Anthony Calderera, for alleged violations of the Fair Labor Standards Act and New York Labor Law. Specifically, Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), for failure to provide spread of hours pay under the NYLL, failure to issue accurate wage statements pursuant to NYLL § 195(3), failure to provide a wage notice at his time of hire pursuant to NYLL § 195(1), and retaliation in violation of the FLSA and NYLL, and battery in violation of the New York Common Law. D.E. 5. Through early mediation, the parties have reached a resolution of this action. Accordingly, Plaintiff now submits this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement. The parties' proposed Executed Settlement Agreement (the "Agreement") is attached as Exhibit A.

**Procedural History**

      On December 21, 2021, Plaintiff Francisco Garcia filed his Complaint. D.E. 1. On January 12, 2022, Plaintiffs filed an Amended Complaint adding Plaintiff Dimas Acosta, as well as claims for retaliation and battery. D.E. 5. Defendants filed their Answer to the Amended Complaint on May 4, 2022. D.E. 9. Prior to the Initial Conference, the parties requested to be referred to mediation, which was granted on July 7, 2022. The parties then held an EDNY mediation with mediator Margaret McIntyre on October 20, 2022, which resulted in a settlement. Thereafter, the parties drafted their formal settlement agreement, which has been fully executed, and is attached hereto as Exhibit A.

      The settlement agreement between the Plaintiffs and the Defendants provides for payment of a gross sum of $35,000.00, inclusive of attorneys' fees and costs. Pursuant to the Agreement, Plaintiffs will receive a total sum of $11,255.40 each, and Plaintiffs' counsel will

receive a total sum of $12,489.20, consisting of $11,255.40 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,233.80 for litigation costs.

### The Court Should Approve the Settlement Agreement as Fair and Reasonable

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants – a corporation and its owners and operators – operate a Greek restaurant. Plaintiff Garcia asserts Defendants employed him as a cook from in or around September 1998 through March 2021. Plaintiff Acosta asserts Defendants employed him as a busboy and server from in or around 2002 through January 7, 2022. Throughout their respective employments, Plaintiffs allege that they commonly worked more than forty hours during many workweeks. For this work, Plaintiffs allege that Defendants paid them part check and part cash as part of a weekly salary. As a result, despite frequently working in excess of forty hours in a workweek, Plaintiffs contend that Defendants failed to pay them their statutorily mandated overtime rate of pay of one and one-half times their applicable regular rate of pay for certain hours they worked in excess of forty hours each workweek in violation of the FLSA, as well as failed to pay them spread of hours pay for each day where the beginning and end of their shifts exceeded ten hours.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiffs were paid correctly for his hours worked. Defendants strenuously argue that Plaintiffs were paid properly, and provided certain records that purported to show the manner and method of their pay. Plaintiffs vigorously reject the veracity of these records, and maintain that they were not paid properly for their overtime hours and spread of hours shifts. Defendants also contest the number of hours worked by Plaintiffs during their workweeks, asserting that Plaintiffs worked fewer hours during their workweeks than alleged. Each of these disputes will turn primarily on the credibility of the parties and the resolution of these disputes would have a significant outcome on liability and Plaintiffs' damages at trial. Additionally, Defendants contend that Plaintiffs are not entitled to liquidated damages, whereas Plaintiffs assert that liquidated damages should be awarded

because Defendants cannot establish that the alleged violations, if proven, were part of good faith efforts to comply with the FLSA.

Plaintiffs calculated their damages in order to assess their best possible recovery in this litigation. Making all reasonable assumptions in their favor, according to Plaintiffs' calculations, Plaintiff Garcia's best potential recovery under the FLSA at trial amounts to $5,919.67 for unpaid FLSA wages and $5,919.67 for FLSA liquidated damages, and Plaintiff Acosta's best potential recovery under the FLSA at trial amounts to $3,896.84 for unpaid FLSA wages and $3,896.84 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in the remaining formal written and document discovery, and depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiffs, even if they are successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because it will likely turn substantially upon the credibility of the parties. As a result, all parties face a serious risk of losing at trial, in whole or in part. Even if Plaintiffs were successful on their FLSA overtime wage claims, but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiffs would not be entitled to liquidated damages under the FLSA, reducing Plaintiffs' available FLSA damages by half. Thus, by settling at this stage, Plaintiffs ensure that they will each receive a substantial recovery in this matter. Indeed, under the terms of the parties' settlement, Plaintiffs will receive the entire amount of their alleged unpaid wages and liquidated damages under the FLSA, even after deducting for attorneys' fees and litigation expenses.

Accordingly, although there is a possibility that Plaintiffs could recover higher damages if the case proceeded to trial, there is also the significant possibility that they could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiffs will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

As noted above, this lawsuit includes claims of retaliation under the FLSA and NYLL, claims for battery under the New York Common Law, as well as other wage claims under the NYLL. Thus, with respect to the Agreement, the parties' release is intended to release of all claims in this action, covering Plaintiff's FLSA and NYLL claims, as well as his common law and retaliation claims. While Courts typically require releases be narrowly tailored to wage and hour claims in FLSA matters, broader releases are appropriate where other claims are asserted. See <u>Feliz v. Parkoff Operating Corp.</u>, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018) (collecting cases) ("Although an employer may not usually obtain a general release in return for settling an FLSA claim, bifurcated settlements, such as the one under consideration here, may include a general release with respect to the settlement of the non-FLSA claims"); <u>Santos v. Yellowstone Properties, Inc.</u>, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) ("While Santos's private agreement with defendants resolving his discrimination claims (which does not require this Court's approval) does contain a general release, that release is appropriate in the context of a separate resolution of non-wage-and-

hour claims[.]"); see also Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (noting additional claims beyond wage and hour claims may be released under appropriate circumstances).

Moreover, the parties' release in the Agreement contains a mutual release of claims. In circumstances where a plaintiff is no longer employed by the defendants, as is the case here, mutual general releases have been approved in FLSA cases by district courts in this Circuit. Chauca v. Abitino's Pizza 49th Street Corp., 2016 WL 2647603, at *1-2 (S.D.N.Y. June 29, 2016) (approving mutual general release in FLSA settlement); Weng v. T&W Restaurant, Inc., 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving mutual general release in FLSA settlement, but denying approval of agreement for other reasons); Cionca v. Interactive Realty, LLC, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (same); Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (citing Souza v. 65 St. Marks Bistro, 2015 WL 727174 7, at *5 (S.D.N. Y. Nov. 6, 2015); and Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)) (denying settlement due to, *inter alia,* the general release being overly broad and not mutual, but holding that the release would be approved if revised to be mutual)); Lola, 2016 WL 922223, at *2 (quoting Souza, 2015 WL 7271747, at *5) (approving settlement agreement with mutual releases and noting "mutual release of claims is acceptable because it 'will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.'"). Accordingly, the parties' release is appropriate in light of Plaintiffs' additional claims for retaliation and battery that are being resolved as part of one complete settlement and the fact that the release constitutes a mutual release with former employees of Defendants.

Furthermore, regarding the remainder of the terms, the settlement agreement does not contain any terms that would militate against the Court approving it. The agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181). The Agreement also does not contain a non-disclosure or non-disparagement provision. As a result, there are no terms in the agreement that would offend the dictates off Cheeks v. Freeport Pancake House, Inc.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator at a formal mediation session.

Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**<u>The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable</u>**

In addition to assessing the reasonableness of the settlement award, most courts since <u>Cheeks</u> have found that courts "must also assess the reasonableness of any attorneys' fee award." <u>Velasquez v. SAFI-G, Inc.</u>, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing <u>Wolinsky</u>, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." <u>Lliguichuzhca v. Cinema 60, LLC</u>, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing <u>Wolinsky</u>, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $11,255.40, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, <u>Fisher v. SD Prot. Inc.</u>, 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. <u>Tiro v. Public House Investments, LLC</u>, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); <u>Kochilas v. Nat'l Merchant Servs., Inc.</u>, 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); <u>McDaniel v. City of Schenectady</u>, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); <u>see also Oxley v. Excellent Home Care Servs., LLC</u>, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), <u>report and recommendation adopted</u>, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing <u>Romero v. Westbury Jeep Chrysler Dodge, Inc.</u>, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); <u>Yong Yuan Wang v. Mandarin Glen Cove, Inc.</u>, 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing <u>Romero</u>, 2016 WL 1369389, at *2) (same); <u>Meza v. 317 Amsterdam Corp.</u>, 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); <u>Cregg v. Firstservice Residential N.Y., Inc.</u>, Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); <u>Najera v. Royal Bedding Co., LLC</u>, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); <u>Calle v. Elite Specialty Coatings Plus, Inc.</u>, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); <u>Rangel v. 639 Grand St. Meat & Produce Corp.</u>, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. <u>See Massiah v. MetroPlus Health Plan, Inc.</u>, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 490 Wheeler Road, Suite 250, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal courts.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009 until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle. That firm employs Matthew J. Farnworth, Esq., Associate, David D. Barnhorn, Esq., Senior Associate, a paralegal, and an administrative assistant, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters. Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees. Mr. Romero has also been selected as a Super Lawyer in "Employment Litigation" for the years 2019, 2020 and 2021.

The undersigned, Matthew J. Farnworth, Esq., graduated from Pace University School of Law in 2016. I was admitted to practice in New York State, as well as the New York Eastern and Southern District Courts in 2018, in New Jersey State Court in 2019, and the Federal District of New Jersey in 2020. I have been employed as an associate for this Firm since August 2021. Prior to joining this firm, I worked as a senior associate and associate at two prominent employment law litigation firms from May 2018 until August 2021.

Throughout my legal career, beginning in May 2018 through the present, I have focused my practice almost exclusively on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Throughout my time as an associate, I have been responsible for actively handling cases in pre-litigation stages, arbitration, administrative agencies, as well as handling active litigation in both state and federal courts.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq., $250.00 per hour for the undersigned, Matthew J. Farnworth, Esq., and $100.00 per hour for the firm's paralegal, Angelica Villalba.[1] "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)). Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero, $250.00 per hour for the undersigned, and $100.00 per hour for the firm's paralegal, Ms. Villalba, are reasonable. Alcantara v. Alon B. Inc., No. 18-CV-5516 (JMA) (AYS), 2021 WL 4463539, at *1 (E.D.N.Y. Sept. 29, 2021) (approving "rates of $400.00 per hour for attorney Peter Romero, Esq. and $100 per hour for paralegal Angelica Villalba" as reasonable "and within the range of similarly experienced attorneys who practice wage and hour cases in the Eastern District of New York."); Solnin v. Sun Life & Health Ins. Co., 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275.00 and noting proper rate for senior associates is up to $325.00 per hour and for experienced partners is between $300.00-$450.00 per hour in this district); Allied 100, LLC v. Chadha, 2021 WL 7184241, at *11 (E.D.N.Y. Jul. 26, 2021) (finding a rate of $325.00 reasonable for an associate who graduated law school in 2018); Cap. One, N.A. v. Auto Gallery Motors, LLC, 2020 WL 423422, at *4 (E.D.N.Y. Jan. 27, 2020) (finding a rate of $275.00 per hour reasonable for associates with more than five years of experience, and a rate of $250.00 per hour reasonable for an associate with less than five years of experience); National Environmental Safety Company, Inc. v. Katz, 2019 WL 1994049, at *2 (E.D.N.Y. May 6, 2019) (finding a rate of $300.00 reasonable for an associate who failed to provide any evidence of his competence beyond his title); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. CEI Contractors Inc., 2022 WL 3225680, at * 5 (S.D.N.Y. August 10, 2022) (awarding an associate who graduated from law school the same year as the undersigned associate, practicing within the associate's particular legal field fees of $250.00 per hour); Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, et al. v. Land Cruising Properties, Inc., 2022 WL 1125623 at *7 (S.D.N.Y. April 15, 2022) (same);

---

[1] While this firm, and Mr. Farnworth's previous firm primarily represent clients on a contingency fee basis, Mr. Farnworth and Mr. Romero have represented some clients on an hourly basis. In those retainers, depending on each client's respective financial abilities, clients have agreed to compensate Mr. Farnworth for representation at the rate of $250.00 to $300.00 per hour and have agreed to compensate Mr. Romero for representation at rates of $300.00 to $500.00 per hour. Accordingly, the firm's requested rates are well within the normal rates awarded in contingency fee matters and the rates actually received by paying clients.

Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Innovation Designs Inc., 2021 WL 4869951, at *7 (S.D.N.Y. Oct. 18, 2021) (same); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019), report and recommendation adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (awarding hourly rate for paralegal at $100.00 in FLSA action); Quito v. El Pedragal Rest., Corp., 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Lopez v. PMMT Inc., 2016 WL 7633264, at *16 (E.D.N.Y. Aug. 25, 2016), report and recommendation adopted, 2017 WL 27943 (E.D.N.Y. Jan. 3, 2017) (awarding hourly rate for paralegal at $100.00 in FLSA action); Gesauldi v. Dan Yant Inc., 6 F. Supp. 3d 264, 274 (E.D.N.Y. 2014) (collecting cases) (awarding hourly rate for paralegal at $100.00 and noting "[v]arious courts in this district have approved this rate for paralegal services."); Apolinar v. Glob. Deli & Grorcery, Inc., 2013 WL 5408122, at *16 (E.D.N.Y. Sept. 25, 2013) (awarding hourly rate for paralegal at $100.00 in FLSA action).

  Here, Plaintiffs' counsel investigated the Plaintiffs' claims, conducted a detailed inquiry regarding Plaintiffs' job duties, their hours worked and compensation received, and Defendants' compensation policies, engaged in relevant pre-mediation discovery, created an assessment of Plaintiffs' damages, engaged in mediation with Plaintiffs and Defendants, and subsequently negotiated a settlement agreement. Due to the contingent nature of the case, Plaintiffs' counsel undertook these efforts with no ultimate guarantee of compensation. Plaintiffs' counsel was zealous in the pursuit of Plaintiffs' litigation objectives and secured a favorable result on the Plaintiffs' behalf. The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

  As a result, the Firm expended a total of 50.7 billable hours on this matter, as evidenced by counsel's contemporaneous billing records, which are annexed hereto as Exhibit B. Thus, Plaintiffs' attorneys' fees in this matter, when calculated pursuant to the lodestar, amount to $11,495.00. Here, Plaintiff's lodestar is more than the $11,255.40 in fees requested under the standard contingency fee method, and are thus reasonable.

  Lastly, Plaintiffs' counsel seeks reimbursement for $1,233.80 in advanced litigation costs, representing $402.00 for the filing fee for the Complaint, $406.80 for the costs of service, and $425.00 for the mediation costs. Proof of payment of same is annexed hereto as Exhibit C, and on the Docket at D.E. 1.

  Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $11,255.40 and expenses in the amount of $1,233.80 should be approved as reasonable.

  In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. We thank the Court for its consideration of these requests.

                Respectfully submitted,

                **/s/ Matthew J. Farnworth, Esq.**
                MATTHEW J. FARNWORTH, ESQ.

C:  All Counsel of Record *via* ECF